UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GEORGE CLAYTON HERRING,

                      Petitioner,                  DECISION AND ORDER

vs.                                                        19-CV-6111 (CJS)

TIMOTHY McCARTHY, *Superintendent of
Auburn Correctional Facility*,

                      Respondent.

_____

## I. INTRODUCTION

After a jury trial in County Court for Monroe County, New York, Petitioner George Clayton Herring was convicted of attempted aggravated murder of a police officer, attempted aggravated assault upon a police officer or a peace officer, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and criminal possession of stolen property in the fourth degree. Transcripts ("Tr."), 634–35,[1] Sept. 6, 2019, ECF No. 13-3. He was sentenced to 40 years to life, 25 years to life, 25 years to life, 25 years to life, and 2 to 4 years, for the respective charges, all to run concurrently. Tr. at 657. The matter is now before the Court on Herring's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., Feb. 8, 2019, ECF No. 1.

Herring alleges four primary grounds for relief: "judiciary misconduct" related to the admission of insufficient evidence from the firearms expert (Pet. at 5); "prosecutor misconduct" for withholding vital evidence (Pet. at 7); ineffective assistance of trial

---

[1] Because many of the filings made by both parties in this case involve a single file that contains a number of different documents, the page numbers referenced throughout this decision and order – from both the trial transcripts and the state court record – will be those automatically generated by the Court's CM/ECF electronic filing system.

counsel for failure to "investigate the case laws and facts," write a winning motion, call helpful or expert witnesses, or cross-examine all witnesses (Pet. at 7–8); and ineffective assistance of appellate counsel for failure to make adequate arguments on appeal (Pet. at 9). Because he has filed his motion *pro se*, Herring's papers have been "construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted). Nevertheless, for the reasons set forth below, Herring's application [ECF No. 1] is denied.

## I. BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action. In deciding Herring's direct appeal, the New York appellate division provided a succinct summary of the key evidence presented to the jury that led to his conviction:

> A police officer testified that he was responding to a dispatch regarding multiple gun shots fired when he encountered [Herring], who matched the description of one of the suspects. The officer exited his vehicle and shouted to defendant to "hold up a second." [Herring] at first lunged forward as if he were preparing to run away, but then he suddenly stopped, turned around, said "F. . . this," and pulled out a handgun and fired three shots in the officer's direction. After a foot chase, [Herring] was apprehended in a backyard. The following morning, the police found a handgun on a rooftop in the vicinity of the backyard where [Herring] had been arrested, and a ballistics test determined that it was the gun that had fired three casings collected at the scene of the crime. After [Herring] was arrested, an officer observed that [Herring] had a cut on his hand between his thumb and index finger, and the previous owner of the handgun testified that he had sustained a similar cut on his hand after firing the weapon. Finally, the People introduced evidence that DNA from a bloodstain found on the gun matched [Herring]'s DNA.

*People v. Herring*, 147 A.D.3d 1345, 1345 (N.Y. App. Div. Feb. 3, 2017). Herring was sentenced on December 12, 2007. Tr. at 641. Later that month, he filed his notice of

appeal of the state trial court's judgment. *See, e.g.,* State Court Record ("SR"), 36–37, Sept. 6, 2019, ECF No. 13-2.

In May 2009, while his appeal was still pending, Herring moved the trial court to vacate the judgment against him under New York Criminal Procedure Law ("NYCPL") § 440.10, arguing that his constitutional rights were violated because (1) he did not give his attorneys permission to waive his preliminary hearing, (2) he was denied the effective assistance of counsel because counsel failed to move for the dismissal of the defective indictment against him, and (3) his right to testify before the Grand Jury was frustrated. The state trial court found that the trial record would permit adequate review of the issues raised in Herring's § 440.10 motion on direct appeal, and therefore denied the motion in its entirety. SR at 43. Herring then sought to appeal the trial court's decision on his §440.10 motion, but was denied leave to appeal by the appellate division. SR at 57.

In his direct appeal, Herring's counseled brief raised three issues: whether the verdict was against the weight of the credible evidence; whether defense counsel's summation deprived Herring of the effective assistance of counsel; and, whether the trial court's sentence was unduly harsh and excessive. SR at 63. In regards to these three issues, the state appellate division concluded that "a different verdict would have been unreasonable and thus that the verdict is not against the weight of the evidence," that defense counsel's theory presented in his summation "of police fabrication and malfeasance was a reasonable trial strategy in the face of strong opposing evidence," and that the sentence was not unduly harsh or severe. *Herring*, 147 A.D.3d at 1345–46. The New York Court of Appeals denied Herring's application for leave to appeal in March 2017. *People v. Herring*, 76 N.E.3d 1083 (N.Y. 2017).

In January 2017, Herring filed a second motion to vacate the judgment against him under NYCPL § 440.10. SR at 180. As the prosecutor noted, Herring's second § 440.10 motion raised similar arguments to his first motion. SR at 211–12. The state trial court again found that the arguments Herring was making could have been raised in his direct appeal, and denied the motion on March 29, 2017. SR at 218. In his application for leave to appeal the trial court's ruling on his second § 440.10 motion, Herring reasserted his arguments, and also argued that the trial court judge failed in his "gate keeping role" for expert testimony and evidence, prosecutorial misconduct for failing to correct false statements and withholding evidence, and ineffective assistance of counsel. SR at 224–28. The state appellate division denied leave to appeal on October 2, 2017. SR at 281.

Herring then sought leave to appeal to the New York Court of Appeals. On October 16, 2017, the Clerk of Court of the New York Court of Appeals sent Herring a letter informing him in clear language that the appellate division's denial of leave to appeal the trial court's denial of his second § 440.10 motion is not appealable to the high court. SR at 282. Nevertheless, Herring persisted and the Court of Appeals denied leave to appeal. On March 5, 2018, the New York Court of Appeals denied Herring's motion for reconsideration. SR at 353.

On February 8, 2019, Herring filed the petition [ECF No. 1] for habeas relief that is presently before the Court.

## II. LEGAL PRINCIPLES

The general legal principles applicable to a habeas petition pursuant to 28 U.S.C. § 2254 are well-settled. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas petitions must be filed within one year of the date on which the

4

petitioner's state judgment became final, though the filing of certain state court collateral attacks on a judgment tolls the limitations period. 28 U.S.C. § 2244(d)(1)–(2). A judgment becomes final "after the denial of certiorari [by the U.S. Supreme Court] or the expiration of time for seeking certiorari." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001). Consequently, where no collateral attacks have been filed, or upon judgment on the final collateral attack, "state judgments are deemed final if no petition for a writ of certiorari has been filed with the Supreme Court within 90 days." *Davis v. Lempke*, 767 F. App'x 151, 152 (2d Cir. 2019) (citing *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998); Sup. Ct. R. 13).

For those petitions that are timely filed, federal courts are obliged to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing AEDPA). "First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). *See also Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*) (stating that 28 U.S.C. § 2254(b)'s "exhaustion requirement is not satisfied unless the [petitioner's] federal claim has been 'fairly presented' to the state courts."). When state law procedurally bars a petitioner from exhausting his remedies, the federal habeas court may deem the claims exhausted but procedurally defaulted. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (citations omitted). Where the court makes such a determination, the petitioner is precluded from litigating the merits of the claim unless he can show cause for the procedural default and resulting prejudice, or can demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice (i.e., that he is actually innocent). *See Wainwright v. Sykes*, 433 U.S. 72, 87–91 (1977).

Second, "[s]hould the state court reject a federal claim on procedural grounds, the

procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). With respect to this doctrine, the Supreme Court has held that claims underlying a habeas petition may be procedurally barred from habeas review if they were decided at the state level on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991). In a case where a state court decision rests on an independent state law ground adequate to support the judgment, federal habeas courts defer to the "state's interest in enforcing its laws." *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999) (quoting *Coleman*, 501 U.S. at 730–31). A ruling on an independent state law ground is adequate to support a judgment where the ruling is "firmly established and regularly followed" by the state courts. *Garcia*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)).

Lastly, federal courts considering claims that were decided by state courts on the merits must employ "a highly deferential standard for evaluating state-court rulings," and must give those state-court decisions "the benefit of the doubt." *Jones v. Murphy*, 694 F.3d 225, 234 (2d Cir. 2012) (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). In such cases, a federal court may issue a writ of habeas corpus only when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Chrysler*, 806 F.3d at 117 (quoting 28 U.S.C. § 2254(d)(1)). A principle is "clearly established Federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). A state court decision is "contrary to" such

clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (citation omitted).

## IV. DISCUSSION

As indicated above, Herring identifies four grounds for habeas relief: "judiciary misconduct," "prosecutor misconduct," the ineffective assistance of trial counsel, and the ineffective assistance of appellate counsel. In opposition, Respondent argues that the petition should be dismissed as untimely. Mem. in Opp., 8–12, Sept. 6, 2019, ECF No. 13-1. Respondent further argues that even if the Court does not dismiss the petition as untimely, each of Herring's claims are either procedurally defaulted or unexhausted, as well as meritless. After a thorough review of Herring's papers and the transcripts and records of the state court proceedings, the Court finds in accordance with Rule 8 of the Rules Governing Section 2254 Cases that an evidentiary hearing is not necessary to address Herring's claims. *See also* 28 U.S.C. § 2254(e)(2). Further, the Court agrees with Respondent that all of Herring's claims are time-barred and without merit.

A. Herring's Petition is Time-Barred.

Under AEDPA, a prisoner in state custody has one year after the date his conviction became final in which to file a habeas petition. *Hizbullahankhamon v. Walker*, 255 F.3d 65, 69 (2d Cir. 2001) (citing 28 U.S.C. § 2244(d)(1)). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" this one-year limitation period. 28 U.S.C. § 2244(d)(2). An application is "properly filed" under § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8–9 (2000).

On March 29, 2017, the New York Court of Appeals denied Herring's application for leave to appeal the appellate division's decision affirming his conviction and sentence. *People v. Herring*, 76 N.E.3d 1083 (N.Y. 2017). Therefore, Herring's conviction became final 90 days later, on June 27, 2017, when his time for seeking *certiorari* from the United States Supreme Court expired. *See, e.g., Davis*, 767 F. App'x at 152 (citing, *inter alia*, Sup. Ct. R. 13). However, because Herring's application for leave to appeal the state trial court's denial of his second § 440.10 motion was still pending, no time was counted toward Herring's 1 year limitation period to file for federal habeas relief until the appellate division denied Herring leave to appeal on October 2, 2017. SR at 281.

Although Herring immediately sought leave from the Court of Appeals to appeal the appellate division's denial, those attempts did not constitute "properly filed" applications for post-conviction or collateral review. "New York courts have held that there is no statutory authority in N.Y.C.P.L. § 450.90 or elsewhere providing that Appellate Division denials of leave to appeal are reviewable by the Court of Appeals." *Walker v.*

8

*Graham*, 955 F. Supp.2d 92, 102 (E.D.N.Y. 2013) (citing *People v. Williams*, 342 N.Y.S.2d 75 (N.Y. App. Div. 1973); *People v. James*, 206 A.D.2d 243, 244 (N.Y. App. Div. 1994)). Accordingly, Herring's second § 440.10 motion "ceased to be 'pending' under 28 U.S.C. § 2244(d)(2) once the [a]ppellate [d]ivision denied leave to appeal, because that denial foreclosed further state appellate review of the subject claims . . . ." *Walker*, 955 F. Supp.2d at 102 (citing *Hizbullahankhamon*, 255 F.3d at 67–68).

Because the time from the appellate division's denial of leave to appeal on October 2, 2017 to the filing of the instant petition in February 2019 was not tolled, Herring's petition is time-barred unless he can demonstrate other grounds that would entitle him to equitable tolling of the 1-year limitation period.

"In 'rare and exceptional' circumstances, AEDPA's one-year statute of limitations can be equitably tolled to permit the filing of an otherwise time-barred petition." *Davis*, 767 F. App'x at 152. To invoke the doctrine of equitable tolling, a petitioner bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Having been alerted by the Clerk of Court to the New York Court of Appeals that the high court could not consider his application for leave to appeal the trial court's denial of his § 440.10 motion, it was unreasonable for Herring to believe that his application was "properly filed" under 28 U.S.C. § 2244(d)(2). *See Artuz*, 531 U.S. at 8 ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."). Further, even if the Court gave Herring the benefit of the doubt and found that he reasonably believed his applications seeking both leave and

9

reconsideration were "properly filed" with the Court of Appeals, Herring has not established that extraordinary circumstances stood in his way.

In his reply brief, Herring states matter-of-factly that his petition should not be dismissed as untimely "[b]ecause the petition [was] filed with all due diligence by the petitioner, and the fact of the petitioner not being a lawyer and not having a lawyer to consult . . . . mixed with the fact of there being about fourteen hundred inmates in this facility, and only room for twenty four inmates in the law library at a time." Reply, 2, Oct. 9, 2019, ECF No. 15. However, filing a petition for habeas relief *pro se* is not a "rare and exceptional circumstance." *See, e.g., Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) ("Finally, Smith's *pro se* status . . . does not merit equitable tolling.").

Further, although Herring's limited access to the law library was no doubt inconvenient, he has made no specific allegations that would lead the Court to conclude that access restrictions interfered with his ability to timely file his habeas petition in the face of reasonable diligence. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("The word "prevent" requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing . . . ."). Indeed, during the time that Herring's limitation period was running, he was able to file not one, but two applications to the New York Court of Appeals for leave to appeal his second § 440.10 motion. Under such circumstances, it is clear that Herring's failure to timely file his petition was the result of his misunderstanding of the law, even after the Clerk of Court for the Court of Appeals clearly informed him by mail in October 2017 that the Court of Appeals could not consider his application for leave to appeal. SR at 285.

Therefore, Herring's application for habeas relief is time-barred and must be dismissed.

B. The Issues That Herring Raises Are Also Barred and Without Merit

Even if Herring's application were not time-barred, relief would still be denied because each of his substantive arguments is barred either procedurally or as unexhausted, and is also without merit.

*1. Judicial Misconduct*

In the memorandum accompanying his application for leave to appeal the state trial court's denial of his second § 440.10 motion, Herring indicated that his due process rights were violated when the state trial court failed in his "Gate Keeping Role" by allowing testimony from a firearms expert based on a "two page report." SR at 227–28. He presents that argument in greater detail in the memorandum submitted with the instant petition, maintaining that "[t]he Judge should have granted a hearing in this case d[ue] to the fact's [sic] of the firearm missing trigger . . . ." Mem., 1–2, Feb. 8, 2019, ECF No. 1-1. Respondent argues that Herring has procedurally defaulted on this claim because he failed to raise it on his direct appeal, and in any event that the claim is without merit. Mem. in Opp. at 15–19. The Court agrees in both respects.

On Respondent's first point, it is well-settled that a prisoner must provide the state with the first opportunity to consider and correct alleged violations of his constitutional rights "by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson*, 763 F.3d at 133 (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)) (internal quotation marks omitted). A petitioner is generally not entitled to federal habeas relief where he has not exhausted his

11

state court remedies. 28 U.S.C. § 2254(b)(1)(A). Here, despite acknowledging that his trial counsel raised the issue in a pre-trial suppression motion, Herring has not exhausted his state court remedies because he failed to raise the issue in his direct appeal or either of his § 440.10 motions.

In any event, the claim is not meritorious. Another court in this district has ably summarized the relevant legal principles:

> The Supreme Court has made clear that "habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). Thus, a petitioner seeking habeas relief based upon an error of state evidentiary law must also allege that the state evidentiary error violated an identifiable federal constitutional right, "which necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system." *King v. Greiner*, No. 02Civ.5810(DLC)(AJP), 2008 WL 4410109, at *38 (S.D.N.Y. Sept. 26, 2008) (citations and footnote omitted). "The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." *Id*. (citing *Brooks v. Artuz*, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct. 17, 2000)) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); *Jones v. Stinson*, 94 F. Supp.2d 370, 391–92 (E.D.N.Y. 2000) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis).

*Howard v. McGinnis*, 632 F. Supp.2d 253, 266 (W.D.N.Y. 2009).

Under New York law, "[a]s a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court." *People v. Williams*, 769 N.E.2d 343, 343 (N.Y. 2002). "Essentially, the trial court assesses whether the proffered expert testimony would aid a lay jury in reaching a verdict" by providing information they would not ordinarily be expected to know. *People v. Lee*, 750 N.E.2d 63, 66 (N.Y. 2001). Where the expert testimony may involve scientific theories and techniques, "a trial court may need to determine whether [it] is generally accepted by the relevant scientific

community." *People v. Abney*, 918 N.E.2d 486, 494 (N.Y. 2009) (discussing *Lee*). By contrast, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) is a holding by the United States Supreme Court regarding a federal trial judge's role with respect to expert testimony based on Rule 702 of the Federal Rules of Evidence; it does not announce any constitutional rights relevant to defendants in criminal proceedings in state trial courts.

In Herring's case, the expert testimony in question was from a firearms examiner with 10 years of experience in the role and a Bachelor's of Science in forensic science; who completed a firearms examiner training sequence from the Florida Department of Law Enforcement; and who received training from the ATF, FBI, and several firearms manufacturers. Tr. at 451–52. In addition, the examiner had testified as an expert in the courts of New York State approximately 170 times prior to his testimony in Herring's case. Tr. at 452.

The examiner testified that the gun found on the roof of a building adjacent to the scene of Herring's arrest was a .25 caliber semi-automatic handgun, that it was operable, and that the .25 caliber shell casings he recovered from his test firings of the gun matched the .25 caliber shell casings found near the location at which Herring was alleged to have fired three shots at a police officer at close range. Tr. at 453–69. Though the examiner's testimony was not strictly expert testimony, but was factual testimony based on his test fires of the weapon, his training and experience set forth in the record were sufficient to qualify him to render such an opinion under New York law. *See People v. Lamont*, 21 A.D.3d 1129, 1132 (N.Y. App. Div. Sept. 1, 2005) (allowing a police officer's testimony that the gun was operable based on his training and experience).

Accordingly, Herring's claim of "judicial misconduct" for failure to hold a *Daubert* hearing must be dismissed.

*2. Prosecutorial Misconduct*

Next, Herring argues that his due process rights were violated when the prosecution failed to disclose evidence favorable to him as part of pre-trial discovery. Pet. Mem. at 3. Specifically, Herring alleges that the prosecution did not turn over the firearms examiner's ballistics report, his notes and photos from his testing, and the 911 recordings from calls that led to police being dispatched to the area in which Herring was ultimately arrested. Pl. Mem. at 4. Herring seems to suggest that the prosecution's alleged failure to turn over the 911 recordings somehow violated his right to confront witnesses against him at trial, and that the ballistics report was exculpatory because the missing trigger showed that the gun was not operable. Pl. Mem. at 5. Respondent counters that Herring's claim is procedurally defaulted because he failed to raise it for state court review, and that in any event the items were all disclosed prior to the trial and none of them were exculpatory. Mem. in Opp. at 19. The Court agrees with Respondent.

First, "if the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule," his claim must be deemed to be procedurally defaulted. *Jackson*, 763 F.3d at 133. As indicated above, in his direct appeal Herring raised only three issues: that his conviction was against the weight of the evidence, that trial counsel was ineffective based on his summation, and that the sentence was unduly severe. In his first § 440.10 motion to vacate, he argued that he never gave his attorneys permission to waive his preliminary hearing, that counsel was

ineffective for failing to move to dismiss a defective indictment, and that he was deprived of his right to testify before the grand jury. In his second § 440.10 motion, Herring raised similar arguments to his first motion. In short, Herring never raised the issues of prosecutorial misconduct, failure to disclose, or violation of his right to confront the callers in the 911 recordings. Because NYCPL Articles 440 and 450 do not provide any further avenues for Herring to pursue these issues, this Court must consider his claims to be procedurally defaulted.

Further, even if Herring's claims were not procedurally defaulted, they are meritless. To begin with, the 911 recordings were not a factor in Herring's conviction. As the appellate division recognized, Herring was convicted on the strength of the testimony of the police officer that he attempted to shoot, the discovery of a cut on his hand and blood on the gun that is consistent with the previous owner's testimony that the slide on that specific gun could cause injury if it was not being held properly, and testimony from the firearms examiner that he had tested the gun and that it was operable despite the missing trigger. *Herring*, 147 A.D.3d at 1345. Additionally, even if the prosecution had improperly withheld the firearms examiner's ballistics report prior to trial, there is nothing exculpatory in the findings that the gun was operable, and that the .25 caliber casings recovered from the test fire bore similar markings to the three .25 caliber casings recovered at the site of the shooting.

Accordingly, Herring's claim of prosecutorial misconduct must be dismissed.

### 3. Ineffective Assistance of Trial Counsel

Herring identifies multiple grounds upon which he believes his trial counsel to have been constitutionally deficient. He claims that his first attorney failed to follow-up on her

request for the 911 records that drew police attention to the area in which Herring was apprehended; that trial counsel further failed to pursue claims that the prosecution violated his constitutional rights by withholding *Brady* material; that trial counsel failed to challenge the admission of a picture of him dressed in a prisoner's jumpsuit; that trial counsel failed to raise *Rosario* objections to his identification based on the 911 calls; that trial counsel failed to properly investigate the deficient foundation for the prosecution's firearms expert's testimony and seek further records, and failed to request a *Daubert* hearing; and that trial counsel failed to call a firearms expert for the defense, to counter the testimony given by the prosecution's firearms expert. Pl. Mem. at 6–10. Respondent maintains that all but one of Herring's ineffectiveness claims are unexhausted, and therefore should be dismissed. Mem. in Opp. at 23–24.

The Sixth Amendment guarantees a criminal defendant the right to the "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland*, 466 U.S. at 687–88. A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

Although Herring unsuccessfully raised ineffective assistance of trial counsel claims on both direct appeal and in his § 440.10 motions, with the exception of his

challenge to counsel's failure to follow-up on pre-trial discovery requests, he did not make any of the arguments presently before this Court. Consequently, because Herring should have raised these arguments in a separate C.P.L. § 440.10 collateral attack in the trial court, he has not adequately exhausted his state court procedures.

Nevertheless, federal courts may deny an application on the merits, notwithstanding a petitioner's failure to exhaust state court remedies. *Hammock v. Walker*, 224 F. Supp.2d 544, 549 (W.D.N.Y. 2002) (citing 28 U.S.C. § 2254(b)(2)). Accordingly, the Court will address the merits of Herring's ineffectiveness claims even though the state courts have not had an opportunity to address all of them.

Even if Herring were successful in demonstrating that his trial counsel's representation was deficient, his ineffective assistance of trial counsel claim must fail because he cannot demonstrate prejudice from any of the alleged errors that he identifies. Prejudice is established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Flores v. Demskie*, 215 F.3d 293, 304 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). To begin with, the 911 records are irrelevant to Herring's conviction, as the crimes he committed occurred after police were present. Moreover, as recounted above and in the state appellate division's denial of Herring's direct appeal, the evidence presented against him at trial was overwhelming.

Most significantly, the jury heard the first-hand account of the police officer who unequivocally identified Herring as the individual who attempted to shoot him, three times, from less than 10 feet away, and who the officer subsequently pursued on foot and

17

apprehended as he attempted to flee the scene in the seconds after the crime. *See, e.g.,* Tr. 319–20. The bullet casings recovered from the scene of the shooting matched the caliber of the gun that was recovered near the location of Herring's apprehension, and Herring's DNA was found on the gun. Although it is theoretically conceivable that trial counsel could have found a firearms expert to rebut the prosecution's expert, Herring makes no specific proffer to suggest a real possibility that another expert could or would offer favorable testimony, particularly when defense counsel's *voir dire* and cross examination were unsuccessful in raising any doubt regarding the chain of custody of the gun or the validity of the prosecution's expert's testing. *See, e.g., Kelly v. Lempke*, 2011 WL 2227174, at *12 (S.D.N.Y. Apr.7, 2011) (finding that petitioner had provided no evidence to support his assertion that an expert would have reached a conclusion favorable to petitioner, and, as a result, his ineffective assistance claim was entirely speculative).

Accordingly, Herring's ineffective assistance of trial counsel claim must be dismissed.

### 4. Ineffective Assistance of Appellate Counsel

Herring also maintains that his appellate counsel was ineffective. He states that counsel was late in filing Herring's appeal, generally failed to properly investigate the facts of the case, failed to raise *Rosario* issues regarding the 911 recordings and the notes from the prosecution's firearms expert, and failed to challenge the DNA evidence against him despite a scandal at the Monroe County crime laboratory that called into question the validity of all DNA testing done there. Pl. Mem. at 10–12. Respondent maintains that Herring's claims were not raised in state court, and thus must be dismissed.

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994) (citation omitted). "A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful." *Garfield v. Poole*, 421 F. Supp.2d 608, 613–14 (W.D.N.Y. 2006) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001)).

Here again, the Court observes that Herring should have raised these arguments in a separate collateral attack in state court, and therefore that he has not adequately exhausted his state court remedies. Nevertheless, the Court will address the merits of Herring's ineffectiveness claims as permitted by 28 U.S.C. § 2254(b)(2). *Hammock*, 224 F. Supp.2d at 549.

Just as with his ineffective assistance of trial counsel claim, Herring's ineffective assistance of appellate counsel claim must fail because even if Herring were able to demonstrate that his appellate counsel's performance was deficient, he cannot show prejudice. The *Rosario* issue that Herring believes that he has regarding the 911 calls is irrelevant to his conviction, and even if it were true that the prosecution failed to turn over the firearms expert report prior to trial – and Respondent points out that Herring has not presented evidence that would suggest the truth of Herring's claim – he offers nothing more than the speculative possibility that such materials would have been favorable to him. That is, he simply "has not identified any non-speculative prejudice arising from

19

appellate counsel's decision[s]." *Forte v. Laclair*, No. 07 CIV. 2533 (DLC), 2008 WL 2434118, at *3 (S.D.N.Y. June 11, 2008) (citation omitted).

Accordingly, Herring's ineffective assistance of appellate counsel claim must be dismissed.

## IV. CONCLUSION

Based on the foregoing, it is hereby ORDERED that Petitioner George Clayton Herring's application for habeas relief [ECF No. 1] is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Herring has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED:   July 10, 2023
         Rochester, New York

_____
CHARLES J. SIRAGUSA
United States District Judge